**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GARY W. HAMM and LINDA M. HAMM,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:19-cv-00426** |
| | ) | **Judge Aleta A. Trauger** |
| **WYNDHAM RESORT DEVELOPMENT CORP., WYNDHAM WORLDWIDE OPERATIONS, INC., WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM REWARDS, INC. and JOHN DOES 1–100,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM

Before the court is the defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 7), under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the motion will be granted, but the claims will be dismissed without prejudice to the plaintiffs' ability to seek leave to amend their Complaint to cure the deficiencies identified herein.

## I.      PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs Gary Hamm and Linda Hamm filed suit on May 20, 2019, asserting primarily fraud-based claims under Tennessee law. (Doc. No. 1.) All claims are asserted against all defendants, who are identified as Wyndham Resort Development Corp., Wyndham Worldwide Operations, Inc., Wyndham Vacation Resorts, Inc., Wyndham Vacation Ownership, Inc.,

Wyndham Rewards, Inc. (collectively "Wyndham" or "Wyndham defendants"),[1] and "John Does 1–100," who are alleged to be individuals employed by one or more of the Wyndham defendants. (Doc. No. 1 ¶ 9.) The plaintiffs assert that diversity of citizenship exists between them and each defendant and that the amount in controversy exceeds $75,000, for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

The plaintiffs do not distinguish among the Wyndham defendants, and the relationships among them do not appear to be relevant for purposes of the defendants' Motion to Dismiss. Generally, Wyndham is alleged to be in the hospitality business, franchising and managing hotels, marketing and selling "vacation ownership interests"—also known as timeshare interests—and providing "consumer financing." (Compl., Doc. No. 1 ¶¶ 30, 31.)

The plaintiffs' claims are premised upon their purchase of timeshare properties and points for resort properties located in Tennessee and Virginia. The plaintiffs allege that they bought "Wyndham timeshares and signed timeshare contracts" in Tennessee and Virginia. (*Id.* ¶ 2.) The plaintiffs claim, very generally, that they own Wyndham-related timeshare or vacation club membership points and/or properties; that they have been continuously pressured into the purchase of additional Wyndham points and/or properties; that Wyndham employees are trained to "intentionally, negligently or fraudulently mislead, mispresent or omit facts" to Wyndham's customers (*id.* ¶ 43); that Wyndham has "systematically eliminated benefits that directly impact Plaintiffs' use" of their Wyndham points and properties, to their detriment (*id.* ¶ 47); and that Wyndham employs "bait and switch" tactics to induce and pressure customers to buy additional points and properties (*id.* ¶ 50).

The plaintiffs allege that the "defendants," collectively, made false and misleading

---

[1] The Complaint refers to the corporate defendants collectively as "Wyndham," without distinguishing among them. The court does so as well.

statements of fact concerning the reasons for, existence of, or amounts of timeshare price reductions for timeshares that the plaintiffs purchased. (*Id.* ¶ 51.) They claim that Wyndham falsely represented to them that they were attending owner education events or meetings, which turned out to be "high pressure" sales presentations. This tactic confused the plaintiffs about what they were purchasing and the terms and conditions of their purchase. (*Id.* ¶¶ 52–56.)

The plaintiffs also claim that Wyndham misrepresented: (1) the facts regarding the price, costs, expenses, and/or values of the timeshare points they purchased (*id.* ¶ 57); (2) that the timeshare points they purchased were a sound financial investment (*id.* ¶ 58); (3) that the property and/or points they purchased were more valuable than the previous purchase(s) (*id.* ¶ 59); (4) that the timeshares would increase in value and could be sold at a profit (*id.* ¶ 60); (5) that their maintenance fees would be lowered if they upgraded or traded, when, "[in] reality," the fees "escalated over the years without warning" (*id.* ¶ 61); (6) that the timeshares could be used as a tax deduction (*id.* ¶ 62); (7) that plaintiffs could refinance their timeshare purchases with their own bank to get a lower interest rate (*id.* ¶ 63); (7) that they would be able to vacation anywhere at any time, when, in fact, desired reservations "were never available or extremely limited and difficult to secure" (*id.* ¶ 64) (8) that their timeshares could be rented to pay for maintenance fees and/or cover their mortgage or to raise additional income for the plaintiffs, when, in reality, there was no rental market for their timeshares (*id.* ¶¶ 65–66); (10) that the plaintiffs had to purchase additional properties and/or points to make their existing membership more "current" and usable (*id.* ¶ 70); (11) that the points program associated with Wyndham's credit card provided more benefits than it actually does (*id.* ¶ 71); (12) that the amount of the equity from their previous timeshare purchase(s) would be applied as a credit when they "upgraded" (*id.* ¶ 72); (13) that the additional debt incurred by the plaintiffs would be a certain

amount, when it was actually much more than the amount they were told (*id.* ¶ 74); (14) that Wyndham would buy back a timeshare if the plaintiffs were unhappy with the purchase and, in fact, that Wyndham's "right of first refusal" was a buy-back program (*id.* ¶¶ 75, 76); and (15) that the plaintiffs' sales representatives would be their personal representatives and help them both in renting their timeshares and in making reservations at other properties (*id.* ¶ 78). The plaintiffs also allege that Wyndham, in its dealings with the plaintiffs, omitted material facts, insofar as it (1) failed to inform the plaintiffs that they would "be competing against the public at large" when they tried to rent out their timeshares or to reserve timeshare units at Wyndham properties (*id.* ¶ 69); (2) failed to inform the plaintiffs about "all of the terms and conditions" of the "Pathways" program offered by Wyndham (*id.* ¶ 77); and (3) failed to inform the plaintiffs that the prices for the timeshare points and properties were hugely inflated and that there was no "after-market" that would allow them to resell their timeshare points and properties to third parties (*id.* ¶¶ 89–91).

The plaintiffs claim that they reasonably relied on Wyndham's misrepresentations and omissions in making their decision to purchase timeshare properties and points from Wyndham. Specifically, they allege that they felt "intense pressure" from the defendants to purchase Wyndham timeshares and/or points and that Wyndham "forced them" to make "pressured and hurried decisions" (*id.* ¶¶ 82–84), as a result of which they were "coerced" into buying timeshare points and properties (*id.* ¶ 85). In support of this assertion, they allege that Wyndham did not provide them with sufficient opportunity to read through their timeshare contracts and other documents or to consult with legal or financial counsel. (*Id.* ¶¶ 95–98.) Finally, the plaintiffs claim that Wyndham did not describe the contents of the closing documents to them and that its representatives either did not "adequately inform" them of the rescission deadline in their

timeshare contract(s) or affirmatively told them that they could not rescind. (*Id.* ¶¶ 101–103.)

Based on these factual allegations, the Complaint asserts causes of action for (1) fraud; (2) fraudulent misrepresentation; (3) fraudulent inducement; (4) misrepresentation by concealment; (5) negligent misrepresentation; (6) violation of the Tennessee Timeshare Act, Tenn. Code Ann. § 66-32-101 *et seq.*; (7) breach of contract; and (8) unjust enrichment. Every paragraph of the factual allegations in the Complaint is incorporated under each "Count," and each "Count" is apparently stated against every defendant indiscriminately.

Although the plaintiffs did not attach to their Complaint the timeshare agreements with Wyndham, the defendants have now filed a Motion to Dismiss, in which they assert that the plaintiffs' claims arise from, and involve the construction of, three separate agreements between Wyndham and the plaintiffs, dated October 4, 2008, September 28, 2014, and May 21, 2015 (collectively, "Agreements"). The Agreements are attached to the defendants' Motion to Dismiss. (Doc. Nos. 7-1, 7-2, 7-3.)

Wyndham seeks dismissal of all claims asserted in the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) the claims of fraud, fraudulent misrepresentation, fraudulent inducement, misrepresentation by concealment, and negligent misrepresentation are barred by the three-year statute of limitations set out in Tenn. Code Ann. § 28-3-105; (2) the terms of the Agreements themselves negate the fraud-based claims; (3) the fraud-based claims are not pleaded with sufficient particularity; (4) the plaintiffs' allegations in support of their Timeshare Act claim and negligent misrepresentation claim are contradicted by the merger and integration clauses of the Agreements and also by the plain terms of the Agreements; (5) the Complaint fails to allege facts showing a specific breach of any of the Agreements and therefore fails to state a claim for breach of contract; and (6) the claim for unjust

enrichment is subject to dismissal as a matter of law since the parties' relationship is governed by express written contracts.

In their Response (Doc. No. 13), the plaintiffs contend that (1) the discovery rule and continuing violation rule tolled the running of the statute of limitations; (2) the fraud-based claims are not negated by the Agreements, because the plaintiffs did not knowingly and voluntarily consent to the Agreements and, instead, were fraudulently induced and coerced into signing them; (3) their fraud claims are pleaded with the requisite particularity; (4) the Complaint alleges facts sufficient to state colorable claims for negligent misrepresentation, violation of the Tennessee Timeshare Act, and breach of contract; and (5) the unjust enrichment claim is not subject to dismissal because the written Agreements are not enforceable.

Wyndham's Reply (Doc. No. 14) asserts that the facts as alleged negate the inference of fraudulent concealment and that the plaintiffs fail to address the impact of the clear right to rescind included in the Agreements.

## II. STANDARD OF REVIEW

For purposes of a motion to dismiss under Rule 12(b)(6), the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.* at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

The *Iqbal* Court suggested that a district court considering a motion to dismiss "can choose to begin" its analysis "by identifying pleadings that . . . are not entitled to the assumption of truth." *Id.* at 679. As indicated above, pleadings that do not constitute factual allegations, including "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations, need not be accepted as true. *Id.* at 681. The question is whether the remaining *factual* allegations plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

## III.    DISCUSSION

### A.    The Fraud-Based Claims Are Not Pleaded with the Requisite Particularity.

Besides being broadly subject to Rule 12, the pleading of fraud-based claims is also governed by Rule 9 of the Federal Rules of Civil Procedure, which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). This standard unquestionably applies to all of the plaintiffs' fraud-based claims—fraud, fraudulent misrepresentation, fraudulent inducement, and fraudulent omission or concealment. *See Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (noting that "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action" (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999))); *PNC Multifamily Capital Inst'l Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 551 (Tenn. Ct. App. 2012) (holding that a fraudulent concealment claim "sounds in fraud" and must be pleaded with particularity); *Cohn Law Firm v. YP Se. Advert. & Publ'g, LLC*, No. W2014-01871-COA-R3-CV, 2015 WL 3883242, at *9 (Tenn. Ct. App. June 24, 2015) (applying particularity requirement to fraud in the inducement claim).

The Sixth Circuit has explained that Rule 9 requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). In addition, when a plaintiff pursues fraud claims against multiple defendants, it typically must make "specific allegations as to each defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 773 (M.D. Tenn. 2013) (Haynes, C.J.). That is, mere "'group pleading' . . . fails to meet . . . [Rule] 9(b)'s specificity requirements." *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005); *see also In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 888 (W.D.N.C. 2001) ("'[G]roup pleading' is clearly inconsistent with Rule 9(b)'s express requirements of specificity." (citation omitted)).

Courts have, however, recognized that fraud may involve subterfuge and misdirection that leave a victim in the dark about many of the details of a scheme, even after he realizes he has been defrauded. Accordingly, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016) (quoting *U.S. Sec. & Exch. Comm'n v. Blackwell*, 291 F. Supp. 2d 673, 691 (S.D. Ohio 2003)).

While the Complaint in this case arguably specifies the allegedly fraudulent statements, it does not otherwise plead the fraud claims with the requisite particularity. First, the plaintiffs do not allege *when* the allegedly fraudulent conduct took place. Although the defendants have attached the timeshare Agreements to their Motion to Dismiss, the most recent of which was signed in May 2015, nearly four years to the day before the plaintiffs initiated this action, the Complaint itself does not contain a single date or even range of dates; other than one reference to the plaintiffs' having been "pressured into multiple upgrades over the last few years" (Compl. ¶ 45), it does not provide even the most rudimentary timeframe for the events giving rise to the plaintiffs' claims. The timeframe for the plaintiffs' claims is not a matter that is solely within the defendants' knowledge, and the plaintiffs make no explanation for their failure to provide some chronological detail.

Second, the plaintiffs do not allege *where* the fraud took place. Other than stating that the plaintiffs live in Tennessee and that they purchased "timeshare properties/points" while at the defendants' office and properties "located in Tennessee and Virginia, among other states" (Compl. ¶ 48), the Complaint contains no reference to place. This is true even with respect to the plaintiffs' allegations that they were pressured into attending, and apparently did attend, owner education events or meetings that turned out to be "extremely lengthy, high-pressure sales

presentations." (Compl. ¶ 52.) Again, the plaintiffs cannot plausibly argue that where their claims arose is a matter solely within the defendants' knowledge.

Third, the plaintiffs make no effort to distinguish among the six Wyndham defendants or to allege which of the defendants employed the sales representatives with whom the plaintiffs dealt, and they do not indicate who made the allegedly fraudulent statements. The statements are all attributed to unnamed sales associates. To justify this lack of specificity, the plaintiffs state that "[i]t is unclear to [them] whether Defendants' employees are also employees of one or more of the other Defendants and/or vice versa. Therefore, Plaintiffs will refer to all Defendants jointly as 'Wyndham.'" (Compl. ¶ 10.) Yet the Agreements attached to the Motion to Dismiss clearly identify the entities with which the plaintiffs contracted and at least some of the sales representatives with whom the plaintiffs dealt.[2] (*See* Doc. Nos. 7-1, 7-2, 7-3.) The plaintiffs' explanation that the employees with whom they dealt might be employed by more than one entity does not justify the plaintiffs' lack of specificity, because they do not explain the source of their confusion regarding with which entity or entities they were interacting. They also do not allege facts suggesting a blurring of corporate formalities or providing a basis for liability on the part of the parent or sibling corporations of the entity or entities with which they actually had dealings.

While there may be some facts within the possession of the defendants to which the plaintiffs do not have access, including the exact nature of the relationships between the various Wyndham corporate entities, the plaintiffs do not seek to avoid dismissal on the grounds that they lack access to key facts, nor do they even request leave to amend the Complaint. Instead, they double down, asserting that the fraud claims are pleaded with adequate particularity. They

---

[2] The primary contracting entity identified on all of the Agreements is Wyndham Vacation Resorts, Inc. which, inexplicably, is not one of the named defendants.

are not. Rule 9(b)'s flexibility with regard to information outside the reach of a plaintiff does not excuse all or even most of the plaintiffs' omissions in this case. If there is information the plaintiffs lack—for example, the precise date or wording of a communication—they could have simply said so in the statement of their claims. Rule 9(b) does not require perfect recollection or knowledge—it merely requires enough particularity for each defendant to know what the claims against him or it are about. *Accord Triumph Hosp., LLC v. Constr. Mgmt., Inc.*, No. 3:19-CV-00353, 2019 WL 3841942, at *6 (M.D. Tenn. Aug. 15, 2019). The Complaint's repeated reference to "defendants" and "Wyndham" is unacceptably vague.

In sum, the court finds that the fraud-based claims are subject to dismissal on the basis that they are not pleaded with the particularity required by Rule 9(b). The plaintiffs have not actually sought leave to amend their Complaint, but, because it is not clear that the claims could not be saved by amendment, the fraud-based claims will be dismissed without prejudice to the plaintiffs' right to seek leave to amend.

Having concluded that the fraud-based claims must be dismissed on the basis that they are inadequately pleaded, the court does not reach the defendants' other arguments regarding these claims.

**B. Tennessee Timeshare Act Claim Is Subject to Rule 9.**

The plaintiffs incorporate all the factual allegations of their Complaint into Count VI, for violation of the Tennessee Timeshare Act ("TTSA") (Compl. ¶ 187), and then broadly assert that, "[a]s described above, the actions of Defendants have violated and continue to violate the Tennessee Time-Share Act" (*id.* ¶ 189). The only insight into how, exactly, they believe the defendants violated the TTSA is provided by their assertions that the TTSA "specifically prohibits misleading oral statements," that the defendants made numerous oral misrepresentations to the plaintiffs to induce the plaintiffs to sign the timeshare contracts, that

the defendants knew the representations were false, and that the plaintiffs reasonably relied on the misrepresentations to their financial detriment. In other words, the TTSA claim is premised upon the same allegedly fraudulent misrepresentations that support the fraud claims.

Tennessee has applied Rule 9's particularity pleading broadly to a range of claims sounding in fraud. *See, e.g.*, *PNC Multifamily Capital Inst'l Fund*, 387 S.W.3d at 555 (holding that "misappropriation or conversion" must be pleaded with particularity under Tenn. R. Civ. P. 9.02); *W. Exp., Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *10 (Tenn. Ct. App. Oct. 26, 2009) ("[T]he pleading requirements set forth at Tenn. R. Civ. P. 9.02 . . . apply to claims brought under the Tennessee Consumer Protection Act." (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999))). Although the Tennessee courts have not been frequently called upon to construe the TTSA and have not considered whether claims thereunder are subject to Rule 9, this court finds that, because the TTSA claim in this case sounds in fraud, it is subject to Rule 9. Thus, the plaintiffs' TTSA claim, like their other fraud-based claims, is subject to dismissal for failure to comply with Rule 9's requirement that such claims be pleaded with particularity. This claim too will be dismissed without prejudice.

### C.     The Negligent Misrepresentation Claim is Time-Barred.

The defendants assert that the plaintiffs' negligent misrepresentation claim fails, and must be dismissed, for the "same reasons that the Plaintiffs' fraud claims fail." (Doc. No. 7, at 14.) More specifically, they argue that the plaintiffs "fail to allege how the alleged misrepresentations were false" and that they "were not justified in their reliance on any alleged misrepresentations made by Defendants." (*Id.*)[3]

---

[3] The defendants do not appear to be arguing that the negligent misrepresentation claim is governed by the heightened pleading standard in Rule 9 or subject to dismissal for failure to

The Complaint, however, does allege that numerous statements by the "defendants" allegedly turned out to be false, including that their investment in the defendants' properties was a "sound financial decision" (Compl. ¶ 58); that the timeshare properties/points they were purchasing were more valuable than their previous purchase (*id.* ¶ 59); that the value would increase and could be sold at a profit (*id.* ¶ 60); that their maintenance fees would be lowered if they upgraded or traded, when, "[in] reality," the fees "escalated over the years without warning" (*id.* ¶ 61); that the timeshares could be used as a tax deduction (*id.* ¶ 62); that the plaintiffs would be able to refinance their purchase through their own bank to reduce their interest rate (*id.* ¶ 63); that they would be able to vacation anywhere at any time, when, in fact, desired reservations "were never available or extremely limited and difficult to secure" (*id.* ¶ 64); that their timeshares could be rented to pay for maintenance fees and/or cover their mortgage or to raise additional income for the plaintiffs, when, in reality, there was no rental market for their timeshares (*id.* ¶¶ 65–66), and so forth. The defendants' reliance argument is based on the premise that the negligent misrepresentation claim is "contradicted by the merger and integration clauses of the Agreements and also by the plain terms of the Agreements." (Doc. No. 7, at 14–15.) Under Tennessee law, however, negligent misrepresentation may be a ground for the

---

alleged the facts supporting the claim with the particularity required by Rule 9. To the extent they are making such an argument, it appears that Rule 9 does not apply to negligent misrepresentation claims under Tennessee law. The Sixth Circuit has recognized that "[w]hether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." *Republic Bank & Tr. Co.*, 683 F.3d at 247. Different state courts have reached varying conclusions regarding whether a claim for negligent misrepresentation under a particular state's law sounds in fraud and is therefore subject to Rule 9. *See id.* (collecting and comparing cases from different jurisdictions). While the Tennessee courts have not expressly considered the question, they appear to have routinely assumed that negligent misrepresentation claims are not subject to Rule 9. *See, e.g.*, *PNC Multifamily Capital Inst'l Fund*, 387 S.W.3d at 549 (applying the "heightened pleading requirements" of Rule 9 to the plaintiff's claims for fraudulent misrepresentation but Rule 8 to the negligent misrepresentation claims).

rescission of a contract. *Isaacs v. Bokor*, 566 S.W.2d 532 (Tenn. 1978). The plaintiffs here are claiming negligent misrepresentation sufficient to render the contracts themselves unenforceable. Thus, the mere existence of a contract would not appear to provide a basis for dismissal of the negligent misrepresentation claims.

The defendants also assert that the negligent misrepresentation claim is barred by the three-year statute of limitations in Tenn. Code Ann. § 28-3-105. This argument is more persuasive. Although a motion under Rule 12(b)(6) is generally an "inappropriate vehicle" for dismissing a claim based upon an affirmative defense, including the statute of limitations, *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012), an exception to the general rule applies—and dismissal may be warranted—if "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run," and, "[i]f the defendant meets this requirement[,] then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001); *see also Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 464 (Tenn. 2012) (finding that, because the facts as alleged in the complaint were "sufficient, in and of themselves, to establish the [defendant's] statute of limitations defense," the burden shifted to the plaintiff "to demonstrate that the allegations in his amended complaint are sufficient to articulate at least a colorable basis for concluding that the statute of limitations has not run").

In considering a statute of limitations defense, Tennessee courts recognize an obligation to examine three interrelated elements: "the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing*, 363 S.W.3d at

456. The parties appear to agree that the three-year limitations period at Tenn. Code Ann. § 28-3-105(1) applies. *See Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (applying the three-year statute of limitations in Tenn. Code Ann. § 28-3-105 to a negligent misrepresentation claim).

The date on which a cause of action accrues is the date on which the statute of limitations begins to run. *Redwing*, 363 S.W.3d at 457. "Under the 'discovery rule' applicable in tort actions" in Tennessee, including negligent misrepresentation claims, "the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990); *Redwing*, 363 S.W.3d at 459. Inquiry notice "'charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" *Redwing*, 363 S.W.3d at 459 (quoting *Sherrill v. Souder*, 325 S.W.3d 584, 593 n.7 (Tenn. 2010)). When a plaintiff is aware of information sufficient to put a reasonable person on notice of the need to investigate "the injury," the claim accrues and the limitations period begins to run. *Id.*

In this case, the defendants have produced three Agreements, the first executed in 2008 and the last in 2015, almost four years before the Complaint in this case was filed. Although the Complaint does not contain reference to any dates, the alleged misrepresentations, whether negligent or fraudulent, are alleged to have induced the plaintiffs into contracting with the defendants. At the latest then, most—if not all—of the representations were made prior to the execution of the 2015 Agreement. To the extent that the terms of the Agreements contradict the defendants' alleged inducements and representations, they would have put a reasonable person on inquiry notice of their misrepresentation claims. Moreover, the falseness of many of the alleged representations should have become apparent to the plaintiffs shortly after they were

made, even without reference to the Agreements. For instance, the plaintiffs likely learned or should have learned that the timeshares could not be used as a tax deduction when they filed their first tax return after buying a timeshares. They do not allege when or whether they tried to refinance their purchases, but presumably, if the interest rates charged by the "defendants" were high, the plaintiffs could have promptly verified the veracity of the statement that refinancing with their own bank was possible by simply contacting their bank. Likewise, it seems unlikely that they did not learn until sometime in the last three years that there was no rental market for their timeshares or that their desired reservations were extremely limited or difficult to secure, when they have owned a timeshare since 2008.

Regardless, the plaintiffs assert that the statute of limitations is tolled by the doctrine of fraudulent concealment. Under this doctrine, statutes of limitations may be tolled for a time when the defendant has "taken steps to prevent the plaintiff from discovering he was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001). "If the doctrine applies, the statute of limitations is tolled until the plaintiff discovers or has inquiry notice of the defendant's fraudulent concealment." *Irvin v. Bass, Berry & Sims, PLC*, No. M2014-00671-COA-R3-CV, 2015 WL 9946272, at *4 (Tenn. Ct. App. Apr. 15, 2015) (citing *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1977)). Under Tennessee law, a plaintiff invoking the doctrine of fraudulent concealment in order to avoid a statute of limitations bar must allege and prove:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Redwing*, 363 S.W.3d at 462–63 (footnoted citations and internal quotation marks omitted).

The plaintiffs claim that they have adequately alleged facts showing that the fraudulent concealment doctrine applies in this case:

> Plaintiffs' Complaint outlines a systematic policy of training and practice that involves misrepresentations, omissions and deceit by Wyndham against Plaintiffs. Plaintiffs are repeatedly lured into "ownership satisfaction" or "ownership update" meetings that in reality are sales presentations to purchase or upgrade timeshare ownership. Defendants mask the true purpose of the meetings in order to fraudulently conceal the illegal conduct of Defendants. Plaintiffs remain unaware of the illegal conduct because they are fraudulently led to believe that one more upgrade is all that is needed to secure the product they were promised.

(*Id.* at 5.) In other words, the plaintiffs are claiming that the same facts that give rise to their fraud-based claims also constitute fraudulent concealment of those facts.

The court finds that the allegations in the Complaint are not adequate to show fraudulent concealment. The alleged misrepresentations give rise to the misrepresentation claims themselves. As a substantive matter, it is difficult to understand how the same allegations can constitute both negligent misrepresentation and fraudulent concealment of such misrepresentations. More to the point, the plaintiffs do not allege with any particularity facts showing that they could not have discovered their injury or the identity of the wrongdoer sooner, despite reasonable care and diligence, particularly in light of the fact that they have been in a relationship with at least some subset of the defendants for more than ten years, nor do they allege facts showing that the defendants affirmatively concealed or withheld information from the plaintiffs or "use[d] some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry." *Redwing*, 363 S.W.3d at 463.

In sum, it appears from the face of the Complaint, supplemented by the Agreements provided by the defendants, that the negligent misrepresentation claim is barred by the statute of limitations. The plaintiffs have not alleged facts that, if true, would establish tolling of the statute of limitations through application of the doctrine of fraudulent concealment. This claim, too, will

be dismissed without prejudice to the plaintiffs' ability to seek leave to amend the pleading. If they choose to seek leave to amend their pleading, the plaintiffs will have an obligation to affirmatively plead facts showing either that their claim is not barred or that the statute of limitations should be tolled.

### D. The Complaint Fails to Allege Facts Supporting Breach of Contract.

The defendants argue that the plaintiffs' breach of contract claim is subject to dismissal for failure to state a claim for which relief may be granted, because the facts alleged in support of the breach of contract claim are so vague and conclusory that they do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. The court agrees.

To establish a claim for breach of contract under Tennessee, a plaintiff must prove the existence of an enforceable contract, a non-performance amounting to a material breach of that contract, and resulting damages. *See, e.g.*, *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011). Under *Twombly* and *Iqbal*, the court "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (citation and internal quotation marks omitted). "Rather, the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Under "Count VII" for "Breach of Contract," the Complaint incorporates all of the previously stated factual allegations. The plaintiffs then state, "[i]n the alternative," that "Defendants entered into a contract with Plaintiffs," that "Plaintiffs paid monetary consideration to Defendants," that "Defendants had a duty to meet the promises and obligation per the oral and written contracts," and that, "[a]s outlined above, Defendants breached those duties to Plaintiffs,"

thus causing the plaintiffs monetary damages. (Compl. ¶¶ 201–05.) These assertions amount to no more than the "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that, under *Iqbal*, do not suffice to state a claim for relief. *Iqbal*, 556 U.S. at 678. The Complaint, moreover, does not identify any particular contractual obligation that any particular defendant failed to satisfy or link such breach to damages. The Complaint, in short, does not plead factual content that permits the reasonable inference that the defendants breached any of the parties' written contracts, and it does not actually allege the formation of any oral contracts, much less their breach.

This claim, too, will be dismissed without prejudice.

### E. Unjust Enrichment Claim

The elements of an unjust enrichment claim are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citation and internal quotation marks omitted). "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966). "Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Id.* (citation omitted). "A contract cannot be implied, however, where a valid contract exists on the same subject matter." *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991). Thus, a party seeking to recover under a theory of unjust enrichment "must demonstrate . . . [that] there [is] no

existing, enforceable contract between the parties covering the same subject matter." *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016) (citation omitted).

The defendants argue here that the plaintiffs' unjust enrichment claim must be dismissed because the plaintiffs "do not dispute the existence of express contracts between themselves and Defendants." (Doc. No. 7, at 17.) In their Response, the plaintiffs state only that the claim is not subject to dismissal, because "Plaintiffs assert that the contracts signed by Plaintiffs are void and, therefore[,] are not enforceable." (Doc. No. 13, at 21.)

Under the heading "Action for Unjust Enrichment," the Complaint sets forth barebones assertions of the elements of an unjust enrichment claim: that the defendants received a monetary benefit from the plaintiffs without consideration, that they refused or failed to return the moneys paid to them, that the defendants "failed to provide Plaintiff with any consideration or value for same" and, therefore, would be "unjustly enriched by keeping the monies received from Plaintiffs." (Compl. ¶¶ 207–08.)

Pleading in the alternative is permissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(3), (d)(3); *see also Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) ("Rule 8(a)(3) permits pleadings in the alternative when, for instance, there is a dispute between the parties as to whether an express agreement exists." (citation and internal quotation marks omitted)). Here, although the plaintiffs do not affirmatively allege that the Agreements are void and unenforceable, the breach of contract claim is pleaded "in the alternative" (Compl. ¶ 201), and their claims of fraud in the inducement and fraudulent omission at least imply that the written Agreements are void or voidable. Although the court will dismiss the fraud-based claims as lacking the requisite particularity and the breach of contract claim for failure to state a claim for which relief may be granted, the plaintiffs will have the ability to seek leave to amend their

complaint. Here, the allegations supporting the unjust enrichment claims are as vague and conclusory as the allegations supporting breach of contract. The claims are subject to dismissal for failure to satisfy Rule 8. Under the circumstances of this case, however, the court again finds that the claims should be dismissed without prejudice.

## IV.     CONCLUSION

For the reasons forth herein, the Complaint will be dismissed in its entirety, but without prejudice to the plaintiffs' ability to seek leave to file an amended pleading that cures the deficiencies identified herein. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge